**UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS (Kansas City)**

**CASE NO.:  2:19-cv-02534-CM-JPO**

NATHAN   C.   JONES,   and   LYN   J.          **CLASS ACTION**
BUCHMILLER, individually and on behalf of
all other similarly situated,

      Plaintiff,

      v.

USHEALTH GROUP, INC., and USHEALTH
ADVISORS, LLC,

      Defendants.

_____/

<u>**DEFENDANT USHEALTH GROUP, INC.'S MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT AND INCORPORATED BRIEF IN SUPPORT**</u>

      Defendant, USHEALTH Group, Inc. ("USHG"), pursuant to Federal Rules of Civil

Procedure 12(b)(1), 12(b)(2) and 12(b)(6), and Local Rule 7.6, moves to dismiss Plaintiffs

Nathan C. Jones ("Jones") and Lyn J. Buchmiller's ("Buchmiller") (together referred to as

"Plaintiffs") First Amended Complaint ("Complaint"), and submits this Brief in Support.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

NATURE OF THE MATTER BEFORE THE COURT ........................................................ 1

STATEMENT OF FACTS .................................................................................................... 1

STATEMENT OF QUESTIONS PRESENTED ................................................................... 2

ARGUMENT ......................................................................................................................... 2

   I.   INTRODUCTION ..................................................................................................... 2

   II.  LEGAL STANDARD ............................................................................................... 5

      a.  12(b)(1) ............................................................................................................... 5

      b.  12(b)(2) ............................................................................................................... 5

      c.  12(b)(6) ............................................................................................................... 7

   III.  PLAINTIFFS HAVE NO ARTICLE III STANDING ............................................ 8

   IV.  THIS COURT DOES NOT HAVE GENERAL PERSONAL JURISDICTION OVER USHG ...................................................................................................................... 11

   V.  NOR IS THERE SPECIFIC PERSONAL JURISDICTION OVER USHG ................. 11

      a.  Plaintiff Jones ................................................................................................... 15

      b.  Plaintiff Buchmiller .......................................................................................... 16

   VI.  ASSERTING PERSONAL JURISDICTION OVER USHG WOULD VIOLATE DUE PROCESS ................................................................................................................. 17

   VII.  THE COURT LACKS PERSONAL JURISDICTION OVER USHG WITH RESPECT TO NON-RESIDENT CLASS MEMBERS ............................................................... 18

      a.  This Court Does Not Have General Personal Jurisdiction Over USHG ........................ 18

      b.  Specific Jurisdiction as to Plaintiffs' Claims Does Not Subject USHG to the Court's Jurisdiction for Non-resident Putative Class Members .......................................................... 19

   VIII.  THE COMPLAINT FAILS TO STATE A CLAIM AGAINST USHG ..................... 21

      a.  Plaintiffs Fail to Plausibly Allege any Conduct by USHG .............................. 21

      b.  The Complaint Does Not Provide Fair Notice Required By Rule 8 .............................. 22

CONCLUSION ..................................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

Cases

*A & P Food Stores, Inc. v. Kornstein*,
   121 So. 2d 701 (Fla. 3d Dist. Ct. App. 1960)...........................................................................10

*Alfaro-Huitron v. WKI Outsourcing Sols., LLC*,
   No. EP-14-CV-00159-FM, 2015 WL 1040464 (W.D. Tex. Mar. 10, 2015)............................14

*Asahi Metal Industry Co. v. Superior Court*,
   480 U.S. 102 (1987) ...............................................................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................................7

*Ashland Hosp. Corp. v. Serv. Employees Int'l Union, Dist. 1199 WV/KY/OH*,
   708 F.3d 737 (6th Cir. 2013) ...................................................................................................21

*Basso v. Utah Power & Light Co.*,
   495 F.2d 906 (10th Cir. 1974) ..................................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................................7, 23

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*,
   137 S. Ct. 1773 (U.S. 2017) ...........................................................................................passim

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ...............................................................................................................12

*Cardenas v. Spinnaker Resorts, Inc.*,
   No. CV 16-2466 (JLL), 2017 WL 3315285 (D.N.J. Aug. 3, 2017) ...................................13, 16

*Chavez v. Church & Dwight Co., Inc.*,
   No. 17 C 1948, 2018 WL 2238191 (N.D. Ill. May 16, 2018) .................................................20

*Chernus v. Logitech, Inc.*,
   No. 17-673(FLW), 2018 WL 1981481 (D.N.J. Apr. 27, 2018) ..............................................19

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018)............................................................................................................20

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .................................................................................................................8

*Cunningham v. Health Plan Intermediaries Holdings, LLC*,
   No. 17-CV-1216, 2018 WL 835222 (N.D. Ill. Feb. 13, 2018)...............................................22

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2013)..............................................................................................................11

*DISH Network LLC*,
   28 F.C.C. Rcd. 6574 (2013)...............................................................................................21, 22

*Donaca v. Dish Network, LLC.*,
   303 F.R.D. 390 (D. Colo. 2014) .............................................................................................21

*Edison Trust Number One v. Patillo*,
   No. 10–1159, 2010 WL 5093831 (D.Kan. Dec. 8, 2010) ........................................................6

*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*,
   618 F.3d 1153 (10th Cir. 2010) ................................................................................................6

*Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*,
   17 F.3d 1302 (10th Cir. 1994) ..................................................................................................6

*Garvey v. Am. Bankers Ins. Co. of Fla.*,
　No. 17-CV-986, 2019 WL 2076288 (N.D. Ill. May 10, 2019)..................................19

*Good v. Fuji Fire & Marine Ins. Co., Ltd.,*
　271 Fed.Appx. 756 (10th Cir.2008) ..........................................................................13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
　564 U.S. 915, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011).....................................6, 11

*Hampton v. Barclays Bank Delaware*,
　No. 18-4071-DDC-ADM, 2019 WL 4256371 (D. Kan. Sept. 9, 2019) .....................9

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
　466 U.S. 408 (1984) ..............................................................................................11, 19

*Hicks v. Health Ins. Innovations, Inc.*,
　No. CV173344SDWLDW, 2017 WL 6764054 (D.N.J. Dec. 20, 2017) ..................18

*Holt v. United States*,
　46 F.3d 1000 (10th Cir. 1995) ....................................................................................5

*In re Dicamba Herbicides Litig.*,
　359 F. Supp. 3d 711 (E.D. Mo. 2019) .......................................................................19

*In re Motor Fuel Temperature Sales Practices Litig.*,
　534 F. Supp. 2d 1214 (D. Kan. 2008).........................................................................7

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
　30 FCC Rcd. 7961, 2015 WL 4387780 (2015) ...........................................................3

*Inspired by Design, LLC v. Sammy's Sew Shop, LLC*,
　200 F. Supp. 3d 1194 (D. Kan. 2016)..........................................................................6

*Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*,
　205 F.3d 1244 (10th Cir. 2000) ..................................................................................5

*Int'l Shoe Co. v. Washington*,
　326 U.S. 310 (1945) .....................................................................................................6

*It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH*,
　No. 3:CV-11-2379, 2015 WL 365681 (M.D. Pa. Jan. 27, 2015) ............................14

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
　511 U.S. 375 (1994) .....................................................................................................5

*Michaels v. Micamp Merch. Servs.*, No. CIV.A.,
　13-191E, 2013 WL 5970340 (W.D. Pa. Nov. 8, 2013) ...........................................17

*Montoya v. Chao*,
　296 F.3d 952 (10th Cir. 2002) .....................................................................................5

*Newsome v. Gallacher*,
　722 F.3d 1257 (10th Cir.2013) ....................................................................................6

*Phan v. Grand Bahama Cruise Line, LLC*,
　No. 15-CV-05019-BLF, 2016 WL 1427648 (N.D. Cal. Apr. 12, 2016).................22

*Phillips Petroleum Co. v. Shutts*,
　472 U.S. 797 (1985) ...................................................................................................20

*Phillips v. Bell*,
　365 Fed.Appx. 133 (10th Cir. 2010) ...........................................................................7

*Quarles v. Fuqua Indus., Inc.*,
　504 F.2d 1358 (10th Cir.1974) ..................................................................................13

*Rafferty v. Denny's, Inc.*,
  No. 5:18-CV-2409, 2019 WL 2924998 (N.D. Ohio July 8, 2019)..............................................19
*Reo v. Caribbean Cruise Line, Inc.*,
  No. 1:14 CV 1374, 2016 WL 1109042 (N.D. Ohio Mar. 18, 2016) .......................................22
*Robbins v. Oklahoma*,
  519 F.3d 1242 (10th Cir. 2008) .................................................................................15, 23
*Saladin v. City of Milledgeville*,
  812 F.2d 687 (11th Cir. 1987) ....................................................................................9
*Salcedo v. Hanna*,
  No. 17-14077, 2019 WL 4050424 (11th Cir. Aug. 28, 2019) ........................................8, 9, 10
*Sanchez v. Launch Technical Workforce Solutions, LLC*,
  297 F. Supp. 3d 1360 (N.D. Ga. 2018).......................................................................20
*Smith v. Bayer Corp.*,
  564 U.S. 299 (2011) .................................................................................................20
*Snyder v. ACORD Corp.*,
  2016 WL 192270 (D. Colo. Jan. 15, 2016) ................................................................22
*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016).............................................................................................8
*Spratley v. FCA US LLC*,
  No. 317CV0062MADDEP, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ..........................17
*Sprint Commc'ns, L.P. v. Cox Commc'ns, Inc.*,
  896 F. Supp. 2d 1049 (D. Kan. 2012)..........................................................................7
*Tal v. Hogan*,
  453 F.3d 1244 (10th Cir. 2006) ....................................................................................7
*Tavasci v. Cambron*,
  2017 WL 3173011 (D.N.M. May 31, 2017)...................................................................22
*Ten Mile Indus. Park v. W. Plains Serv. Corp.*,
  810 F.2d 1518 (10th Cir. 1987)...................................................................................14
*Thomas v. Taco Bell Corp.*,
  879 F. Supp. 2d 1079 (C.D. Cal. 2012) ......................................................................14
*Utah*,
  414 U.S. 538 (1974) ................................................................................................20
*Velez v. Portfolio Recovery Assocs., Inc.*,
  881 F. Supp. 2d 1075 (E.D. Mo. 2012) ......................................................................14
*Volt Delta Res., Inc. v. Devine*,
  740 P.2d 1089 (Kan. 1987).........................................................................................6
*Walden v. Fiore*,
  134 S. Ct. 1115 (U.S. 2014) ......................................................................................12
*Wenokur v. AXA Equitable Life Ins. Co.*,
  No. CV-17-00165-PHX-DLR, 2017 WL 4357916 (D. Ariz. Oct. 2, 2017)............................20
*Wheeler v. Hurdman*,
  825 F.2d 257 (10th Cir.) .............................................................................................5
*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ............................................................................................6, 17

Statutes

iv

28 U.S.C. §§ 1331–32 ...................................................................................................5
47 U.S.C. § 227 ...........................................................................................................2

Rules

Federal Rule of Civil Procedure 12 .............................................................1, 5, 7, 21

Other Authorities

Restatement (Second) of Torts § 222A ......................................................................15
Restatement (Second) of Torts § 652B......................................................................14

## NATURE OF THE MATTER BEFORE THE COURT

USHG has moved to dismiss the Complaint for lack of subject matter jurisdiction; lack of personal jurisdiction; and failure to state a claim upon which relief can be granted. This Court lacks subject matter jurisdiction because Plaintiffs lack Article III standing. This Court lacks general and specific personal jurisdiction over USHG with regard to the named Plaintiffs and non-resident putative class members. Finally, Plaintiffs have failed to state a claim for relief against USHG because they have not sufficiently alleged that USHG is directly or vicariously liable for the alleged conduct of the third parties identified in the Complaint.

## STATEMENT OF FACTS

1.      USHG is a Delaware Corporation with its principal place of business in Fort Worth, Texas, and USHG has *no contacts* with the State of Kansas. Ex. A at ¶¶ 3, 7-9, 11-15.

2.      USHG is a holding company for numerous subsidiaries, including USHEALTH Advisors, LLC ("USHA"), and is neither a licensed insurance company nor a licensed insurance agency; it does not market, sell or underwrite any insurance products. USHG and its subsidiaries are separate and distinct entities. *Id.* at 4-6.

3.      USHG did not send text messages to Plaintiffs, and does not conduct telemarketing or send text messages to solicit sales from potential customers, in Kansas or in any other State. *Id.* at ¶¶ 18-20.

4.      USHG has no contractual relationship or right to control the activities of any of the individuals alleged in the Complaint to have sent text messages to Plaintiffs. *Id.* at ¶¶ 16-17.

5.      Buchmiller is an admitted resident of St. Louis County, Missouri. Compl. at ¶ 2.

6.      Jones alleges he received two text messages, and Buchmiller alleges she received one text message. Compl. at ¶¶ 29, 30, 45.

7.      USHG has never owned or used the telephone number (913) 562-6134, or short code 484848 – the telephone numbers allegedly used to text Plaintiffs.  Ex. A at ¶ 10.

## STATEMENT OF QUESTIONS PRESENTED

1.      Whether Plaintiffs have Article III standing.

2.      Whether USHG is subject to personal jurisdiction in the State of Kansas for the claims of the named Plaintiffs.

3.      Whether USHG is subject to personal jurisdiction in the State of Kansas for the claims of non-resident putative class members.

4.      Whether Plaintiffs have sufficiently stated a claim for relief under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## ARGUMENT

## I.      INTRODUCTION

Plaintiffs filed a one-count Complaint for purported violations of the TCPA, alleging that Buchmiller received *one* text message from Gerald Hunter – a non-party – and Jones received *two* text messages from Chad Beisel – another non-party – that offered assistance with obtaining healthcare insurance coverage.  Compl. at ¶¶ 29, 30, 45.  According to Plaintiffs, their alleged injuries for their phones capturing these three text messages included the following: "their privacy has been violated," "they were subject to annoying and harassing text messages that constituted a nuisance," the texts invaded "their interest in seclusion," and "they wasted time addressing or otherwise responding to the unwanted text messages to their cellular phones."  *Id.* at ¶¶ 48, 49. Plaintiffs make no allegations about what they were doing or where they were when the alleged texts were received, or that their telephones even rang or vibrated.  Plaintiffs do not allege that they responded to the texts in any manner or that the texts cost them a cent or in any way adversely

impacted the utility of their cellular telephones.   The Complaint nevertheless demands trebled statutory damages for Plaintiffs and all members of a proposed nationwide class.   *Id.* at 10 ("Demand for Judgement" c.).

The facts alleged in the Complaint do not establish Article III standing, as the Eleventh Circuit has recently made clear in *Salcedo v. Hanna*.   Plaintiffs have failed to demonstrate that they suffered a concrete, actual injury as a result of their purported receipt of a single text message, or in Jones' case, two text messages.   Their cursory allegations that their privacy was somehow invaded or that they suffered actual, actionable harm through receipt of the text messages, if deemed adequate, renders the constitutional requirements for standing a nullity.   The TCPA is a statute that is often used to engage in judicial extortion,[1] and Plaintiffs' attempt to create a class action and windfall damages through the combined three text messages that they allegedly received pushes the law considerably beyond common sense.   It should be concluded that they have not alleged and did not suffer a concrete injury-in-fact and, as a result, this action should be dismissed with prejudice.

If the Court disagrees, it should still dismiss the claims against USHG because USHG does not have contact with, and is not subject to personal jurisdiction in, this forum.   The reality is that USHG has no contacts in the State of Kansas; it is not registered to conduct business in Kansas; and Kansas is not USHG's "home."   Moreover, USHG did not knowingly and voluntarily – or in any way acting with intent – direct any activity relating to Plaintiffs' claims into the forum state.   Plaintiffs cannot apply the acts of other individuals or distinct business entities in attempting to

---

[1] As observed by Ajit Pai, the current chairman of the Federal Communications Commission, "the TCPA has become the poster child for lawsuit abuse, with the number of TCPA cases filed each year skyrocketing from 14 in 2008 to 1,908 in the first nine months of 2014," and that, "in practice the TCPA has strayed far from its original purpose."   *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 8073, 2015 WL 4387780 at *80, 81 (2015) (Pai, dissenting).

hale USHG into court.   What's more is that Buchmiller is an admitted resident of St. Louis County, Missouri, so there can never be a connection between the alleged text message she received in Missouri and the State of Kansas.   Further, the Court should dismiss the nationwide class allegations because the Court lacks personal jurisdiction over USHG for non-resident putative class members.

Lastly, by Plaintiffs' pleading, this case is not about the conduct of USHG, nor is it about some other person or entity acting with the authority of USHG.   It appears to be about individual licensed insurance agents[2] with various States allegedly texting Plaintiffs' cellular telephones with information regarding healthcare insurance coverage.   But there is *no relationship* between USHG and the licensed health insurance agents, and Plaintiffs have made no agency allegations as to USHG (or either Defendant, for that matter).   That is because USHG is an insurance holding company, nothing more, and the named individuals are independent contractors contracted to sell USHA insurance products.   The Complaint's conclusory allegations improperly lump USHG and USHA into one entity and assumes – without any factual or legal support – that USHA's contractual relationships with independently licensed insurance agents somehow apply to USHG too.   They do not, and Plaintiffs have failed to allege any conduct by USHG whatsoever – or any basis to believe the texts were sent by or on behalf of USHG.   Plaintiffs' conclusory assertions are not enough to state a plausible claim for relief under the TCPA.

---

[2] The use of terms "licensed insurance *agent*" and "insurance *agent*" should not be misconstrued to infer an agency relationship between the licensed insurance agents and USHA.   The term "agent" in the context of the insurance industry has a meaning distinct from the legal term of art used to describe a principal and agent relationship.   When an individual is licensed by a state to sell insurance products, they become "licensed insurance agents."   These insurance agents usually contract with one or more insurance providers to sell insurance services and products. Thus, they are "insurance agents" as licensed by the state – not agents controlled by a principal (unless such facts are shown by a party attempting to prove a principal/agent relationship).

## II.   LEGAL STANDARD

### a.   12(b)(1)

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted). Federal district courts have original jurisdiction over all civil actions arising under the constitution, laws, or treaties of the United States or where diversity of citizenship exists.   28 U.S.C. §§ 1331–32.   "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted).   Since federal courts are courts of limited jurisdiction, the party invoking federal jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may be premised on a facial or factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).   A facial attack challenges the sufficiency of the complaint's allegations.   *See id.*   In contrast, a factual attack questions the existence of subject matter jurisdiction in fact. *Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir.)*, cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987).   Because a factual attack challenges a court's power to hear the case, a court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts,"   *Holt*, 46 F.3d at 1003.

### b.   12(b)(2)

To establish personal jurisdiction over a defendant, a plaintiff must show that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process. *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

The Kansas long-arm statute authorizes courts to exercise personal jurisdiction to the fullest extent allowed under the Constitution of the United States. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (citing *Volt Delta Res., Inc. v. Devine*, 740 P.2d 1089, 1092 (Kan. 1987)). Due process requires that a nonresident defendant have such "minimum contacts with the forum state that he should reasonably anticipate being haled into court there", and that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159–60 (10th Cir. 2010); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Two types of personal jurisdiction have evolved from these due process principles: general jurisdiction and specific jurisdiction. General personal jurisdiction is satisfied when a defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) (citation and internal quotation omitted). Specific personal jurisdiction exists when the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum. *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir.2013). In order to assert specific personal jurisdiction, Plaintiffs must show that their claims arise out of or relate specifically to activities that USHG purposefully directed at Kansas. *Inspired by Design, LLC v. Sammy's Sew Shop, LLC*, 200 F. Supp. 3d 1194, 1206 (D. Kan. 2016).

Unless the court holds an evidentiary hearing, at the motion-to-dismiss stage a plaintiff need only establish a *prima facie* case of personal jurisdiction. *Edison Trust Number One v. Patillo*, No. 10–1159, 2010 WL 5093831, at *1 (D.Kan. Dec. 8, 2010). Under a *prima facie*

standard, the Plaintiffs' allegations are presumed true and all factual disputes are resolved in the Plaintiffs' favor, but the ultimate burden remains on the Plaintiffs to demonstrate the existence of jurisdiction by a preponderance of the evidence. *Sprint Commc'ns, L.P. v. Cox Commc'ns, Inc.*, 896 F. Supp. 2d 1049, 1056 (D. Kan. 2012).

**c.   12(b)(6)**

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). *Phillips v. Bell*, 365 Fed.Appx. 133, 137 (10th Cir. 2010). To satisfy the pleading requirements, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. A "sheer possibility that the defendant has acted unlawfully" is insufficient, and "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555-56. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* at 557. A complaint therefore must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action therefore will not suffice. *Twombly*, 550 U.S. at 555. In determining the sufficiency of a complaint, the court must accept as true all well-pled factual allegations and draw all reasonable inferences therefrom in the light most favorable to the non-moving party, *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006), but need not credit bald assertions or legal conclusions when deciding a motion to dismiss. *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D.

Kan. 2008).

**III.    PLAINTIFFS HAVE NO ARTICLE III STANDING**

As this case is about *one* text message for Buchmiller and *two* for Jones, Plaintiffs have

not and cannot allege the type of concrete harm that meets the injury-in-fact requirement of

Article III.  Article III of the U.S. Constitution limits federal courts' jurisdiction to certain cases

and controversies, and requires that a plaintiff establish that he or she has standing to sue.

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).  There are three elements required to

establish Article III standing: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is

fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

by a favorable judicial decision."  *Salcedo v. Hanna*, No. 17-14077, 2019 WL 4050424, *2 (11th

Cir. Aug. 28, 2019) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised*

(May 24, 2016)).  The first element, which requires a "concrete injury even in the context of a

statutory violation," (*id.* at *3 (quoting *Spokeo* 136 S. Ct. at 1548-49)), is at issue here.

The Eleventh Circuit just recently held that receiving a single unsolicited text message

does *not* generate a "concrete injury in fact that establishes standing to sue in federal court."

*Salcedo*, 2019 WL 4050424 at *1.  The *Salcedo* court analyzed the legislative history of the

TCPA, and the Supreme Court's decision in *Spokeo* – which concluded that plaintiffs must allege

concrete injuries and not rely on mere statutory violations to establish standing – to determine

that the "brief, inconsequential annoyance" of a TCPA violation is not one of the "real but

intangible harms" that Congress intended for the TCPA to remedy.  2019 WL 4050424 at *7.  In

other words, a TCPA violation may be "[a]nnoying, perhaps, but not a basis for invoking the

jurisdiction of the federal courts." *Id.*

Here, Plaintiffs make sparse allegations of the "harm" they supposedly "suffered" as a

result of the text messages at issue:  (1) "their privacy has been violated"; (2) "they were subject

to annoying and harassing text messages that constituted a nuisance"; (3) the texts invaded "their interest in seclusion;" and (4) "they wasted time addressing or otherwise responding to the unwanted text messages to their cellular phones."  Compl. at ¶ 48, 49.  However, as the Eleventh Circuit made clear in *Salcedo*, Plaintiffs' conclusory harms – if one could call them that – are not bases for invoking the jurisdiction of the federal courts.  *See, e.g., Hampton v. Barclays Bank Delaware*, No. 18-4071-DDC-ADM, 2019 WL 4256371, at *6 (D. Kan. Sept. 9, 2019) (applying *Spokeo* and finding that plaintiff's allegations of "a bare procedural violation" did not satisfy the concrete injury requirement of Article III standing).  Thus, Plaintiffs do not have Article III standing and this case should be dismissed.

Jones may try to distinguish *Salcedo* because he supposedly received two text messages, not one, but *Salcedo* instructs that the *quantity* of calls is not the determinative question for Article III standing under the TCPA, the *quality* of the alleged injury is.  In other words, "[t]here is no minimum quantitative limit required to show injury; rather, the focus is on the qualitative nature of the injury, regardless of how small the injury may be."  *Salcedo,* 2019 WL 4050424 at *7 (quoting *Saladin v. City of Milledgeville*, 812 F.2d 687, 691 (11th Cir. 1987)).  Like *Salcedo*, neither Plaintiff has "alleged anything like enjoying dinner at home with [their] famil[ies] and having the domestic peace shattered by the ringing of the telephone.  Nor [have they] alleged that [their] cell phone[s] [were] searched, dispossessed, or seized for any length of time."  *Id.*  As the Eleventh Circuit elaborated, "[t]he chirp, buzz, or blink of a cell phone receiving a single text message is more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face.  Annoying, perhaps, but not a basis for invoking the jurisdiction of the federal courts."  *Id.*  The same is true of the fleeting text messages at issue here.

Plaintiffs do not allege that they responded to the texts, thus they wasted no time

"addressing or otherwise responding to the texts."  Even if they had, the "brief, inconsequential annoyance" of responding to a text – which Plaintiffs did not do – is not the "real but intangible harms" that Congress intended for the TCPA to remedy.  *Salcedo*, 2019 WL 4050424 at *7-8 ("concrete harm from wasted time requires, at the very least, more than a few seconds").

The Eleventh Circuit also dealt with Plaintiffs' remaining allegations of harm:

> With respect to his allegations of invasion of privacy, we look to the generally accepted tort of intrusion upon seclusion, which creates liability for invasions of privacy that would be "highly offensive to a reasonable person."  Restatement (Second) of Torts § 652B.  The requirement that the interference be "substantial" and "strongly object[ionable]" instructs us that a plaintiff might be able to establish standing where an intrusion on his privacy is objectively serious and universally condemnable . . . . Simply sending one text message to a private cell phone is not closely related to the severe kinds of actively intermeddling intrusions that the traditional tort contemplates.  Salcedo's reasoning would equate opening your private mail—a serious intrusion indeed—with mailing you a postcard.

> . . . Salcedo [also] asks us to compare the traditional torts of trespass and nuisance, but we find them also to be distinct both in kind and in degree.  Trespass requires intentionally "enter[ing] land in the possession of the other," *id.* § 158(a), and private nuisance is "a nontrespassory invasion of another's interest in the private use and enjoyment of land," *id.* § 821D.  Although, as we have noted, Congress was concerned about intrusions into the home when it enacted the TCPA, Salcedo has alleged no invasion of any interest in real property here.  Furthermore, even in the context of nuisance to real property, in Florida, "***[m]ere disturbance and annoyance as such do not in themselves necessarily give rise to an invasion of a legal right.***"  *A & P Food Stores, Inc. v. Kornstein*, 121 So. 2d 701, 703 (Fla. 3d Dist. Ct. App. 1960).  Hanna's text message is thus not closely related to these traditional harms because it is not alleged to have infringed upon Salcedo's real property, either directly or indirectly.

> Salcedo also asks us to consider the personal property torts of conversion and trespass to chattel.  Conversion is an interference with chattel "which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."  Restatement (Second) of Torts § 222A.  ***Salcedo's allegations are nowhere near a complete and permanent dominion over his phone, so recourse to this serious kind of tort is unhelpful. The same is true for the tort of trespass to chattel, which involves intentionally "using ... a chattel in the possession of another.***"  *Id.* § 217(b).

*Salcedo*, 2019 WL 4050424, at *6–7 (emphasis added).

Plaintiffs' allegations are utterly lacking in facts that could result in any finding that the *one* text message to Buchmiller and *two* text messages to Jones caused them any actionable harm.  Therefore, the Complaint should be dismissed with prejudice.

## IV.  THIS COURT DOES NOT HAVE GENERAL PERSONAL JURISDICTION OVER USHG

General personal jurisdiction exists if a defendant's contacts arise from continuous, systematic, and substantial presence in the forum state.  *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 415 (1984).  The Supreme Court has clarified that to establish general personal jurisdiction over corporate entities such as USHG, its "affiliations with the State [must be] so 'continuous and systematic' as to render [it] essentially at home in the forum State,'" akin to the "paradigm bases for general jurisdiction" of a corporation's place of incorporation or principal place of business.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 (2013) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

Nothing in the Complaint suggests that USHG has the continuous and systematic contacts required for general personal jurisdiction, nor could it.  USHG was organized under the laws of the State of Delaware and its principal place of business is Fort Worth, Texas.  As made clear in the accompanying Declaration of Konrad H. Kober ("Kober Declaration"), attached as Exhibit A, USHG lacks the continuous and systematic jurisdictional contacts with the State of Kansas to render it "essentially at home" there.  *See* Statement of Facts ("SOF") ¶ 1; Ex. A at ¶¶ 3, 7-9, 11-15.  Accordingly, there is no basis for the Court to find a *prima facie* showing of general jurisdiction over USHG.

## V.  NOR IS THERE SPECIFIC PERSONAL JURISDICTION OVER USHG

Specific jurisdiction over USHG is also lacking.  Specific jurisdiction requires that a defendant purposefully directed its activities at the State of Kansas, and that a plaintiff's claimed

injury arose from those same activities.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (1985).  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State."  *Burger King*, 471 U.S. at 474-75.  Thus, to show minimum contacts, Plaintiffs are required to point to "*an action of the defendant* purposefully directed toward the forum State."  *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112 (1987) (emphasis added).  It is black letter law that the **"'minimum contacts' necessary to create specific jurisdiction . . . . must arise out of contacts that the 'defendant himself' creates with the forum State."** *Walden v. Fiore*, 134 S. Ct. 1115, 1122-23 (U.S. 2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis added).  The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."  *Id.* (collecting cases).

Here, Plaintiffs allege merely that individual persons (third parties) contracted with USHA – not USHG – as independent contractors contacted Plaintiffs with supposed unsolicited offers for insurance coverage.  Compl. at ¶¶ 19, 21, 22, 35, 37; SOF ¶ 4; Ex. A at ¶¶ 16-17 (explaining that none of the individual insurance agents named in the Complaint have any relationship with USHG).  As Plaintiffs only allege conduct by third parties, and none by USHG whatsoever, they allege *no* contacts between USHG and Kansas.  The Kober Declaration makes clear that USHG is not licensed to conduct business in Kansas; has no contractual or agency relationship with the independent insurance agents identified in the Complaint; does not have bank accounts, employees, mail box addresses, or telephone numbers in Kansas; does not pay taxes in Kansas; has never owned or operated a call center in Kansas; neither made or directed the making of the text messages in this case nor does any telemarketing whatsoever; has never

owned or used the telephone numbers alleged to have been used to text Plaintiffs; and did not authorize any person to send text messages on its behalf in the State of Kansas. *See* SOF ¶ 1, 3; Ex. A at ¶¶ 3, 7-17.  As Plaintiffs cannot refute this evidence, this case must be dismissed.  *See Cardenas v. Spinnaker Resorts, Inc.*, No. CV 16-2466 (JLL), 2017 WL 3315285, at *4 (D.N.J. Aug. 3, 2017) (granting motion to dismiss TCPA claim for lack of personal jurisdiction where defendant submitted a declaration establishing that it was an out-of-state corporation with no employees in the forum; it did not conduct telemarketing activities or make telephone calls to solicit sales from potential customers; all telemarketing activities directed to potential customers were conducted by subsidiary companies or independent contractors they hired; it was not registered to do business in the forum state and did not solicit business there).

Plaintiffs' only explanation as to why the alleged texts came from USHG is that USHG is the parent company of USHA, the company that contracted with the licensed insurance agents identified in the Complaint.  Compl. at ¶ 7.  That fact is irrelevant because mere ownership by a parent corporation of a subsidiary present in the forum state will not automatically subject the parent to personal jurisdiction in that forum.  "For purposes of personal jurisdiction, 'a holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity.'"  *Good v. Fuji Fire & Marine Ins. Co., Ltd.,* 271 Fed.Appx. 756, 759 (10th Cir.2008) (quoting *Quarles v. Fuqua Indus., Inc.,* 504 F.2d 1358, 1362 (10th Cir.1974)).

In *Velez v. Portfolio Recovery Assocs., Inc.*, a plaintiff attempted to assert TCPA claims against a parent corporation based on a subsidiary's operation of a call center in the forum.  The court held that there was no personal jurisdiction over the parent corporation because absent an "indication on the record that Defendant dictates every facet of the LLC's business,"

"Defendant's ownership interest in the LLC is too distant and limited a contact with [the forum] to justify subjecting it to personal jurisdiction."  881 F. Supp. 2d 1075, 1085 (E.D. Mo. 2012). Here, Plaintiffs' sole allegation connecting USHG to the forum is that USHA has a location in Overland Park, Kansas.  Compl. at ¶ 16.  Aside from the fact that this is not true, (*see* Ex. A to USHA's Motion to Dismiss, at ¶ 8), *Velez* makes clear that this alone does not subject USHG to personal jurisdiction in Kansas.

Plaintiffs simply state no facts that would provide this Court a non-speculative basis to rebut this presumption and impute the jurisdictional contacts of USHA's independent contractors with Kansas to USHG.  While, for purposes of personal jurisdiction, the actions of an agent may be attributed to the principal, an agency relationship cannot be presumed to exist, and it is Plaintiffs' burden to make a *prima facie* showing of an agency relationship between USHG and the persons who called or texted Plaintiffs through the introduction of their own affidavits or other competent evidence.  *See Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1526 (10th Cir. 1987).  *See also It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH*, No. 3:CV-11-2379, 2015 WL 365681, at *11 (M.D. Pa. Jan. 27, 2015); *Alfaro-Huitron v. WKI Outsourcing Sols., LLC*, No. EP-14-CV-00159-FM, 2015 WL 1040464, *7 (W.D. Tex. Mar. 10, 2015) (finding that agency relationship cannot be presumed for personal jurisdiction analysis). Plaintiffs have not offered any facts to support the existence of an agency relationship.

In the context of the TCPA, to establish an agency relationship, the alleged principal must have "controlled or had the right to control [the alleged agents] and, more specifically, the manner and means of the [telemarketing] campaign they conducted."  *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678, 679 (9th Cir. 2014).  Nothing remotely along these lines is alleged in the Complaint.  Nor could Plaintiffs do

so with respect to USHG.  As averred in the accompanying declarations, USHG did not control, direct, or authorize any person to send the text messages described in the Complaint or any other text messages with an auto-dialer.  SOF ¶ 3-4; Ex. A at ¶¶ 14-18.

Plaintiffs have presented no evidence showing that USHG exercised any direction or control, let alone the level of control over the independently licensed insurance agents, who are not even contracted with USHG, necessary to make them USHG's agents.  As Plaintiffs have failed to make a *prima facie* case for agency, personal jurisdiction cannot be imputed from the insurance agents to USHG.

### a.  Plaintiff Jones

Jones alleges he received two text messages from Chad Beisel, an individual who allegedly identifies himself as a "Field Sales Leader" contracted with "USHEALTH Advisors" – not USHG – on his LinkedIn page.  Compl. at ¶21.  Other than an allegation of an undisclosed website identifying Beisel as a "USHEALTH *Advisors* Agent," but also containing the words "USHEALTH Group" on top of the page, Jones has alleged zero connection between Beisel and USHG.  *See* Compl. at ¶ 19 (emphasis added).  Jones also provides transcripts of the alleged text messages he received.  *See* Compl. at ¶¶ 29-30.  Neither of the two brief texts reference USHG even once.  Additionally, Jones makes a bald assertion, on information and belief, that the telephone number that texted Jones, (913) 562-6134, "is a number used by Defendants to conduct business."[3]  Compl. at ¶ 32.  However, as the Kober Declaration makes clear, this number is not owned by and has never been used by USHG.  SOF ¶ 7; Ex. A at ¶ 10.  Jones'

---

[3] This allegation, like the entire Complaint, improperly lumps defendants together because "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations . . . . "  *Robbins v. Oklahoma,* 519 F.3d 1242, 1247, 1248 (10th Cir. 2008) (emphasis in original).

conclusory allegations that the text messages came from or on behalf of USHG cannot stand in light of the Kober Declaration. *See* Ex. A at ¶¶ 16-17 (explaining that USHG has no relationship with or control over Chad Beisel).

### b. Plaintiff Buchmiller

Like Jones, Buchmiller's allegations lack any connection to USHG. Buchmiller alleges that Gerald Hunter, the independent insurance agent alleged to have texted her, is identified on the internet as a "USHEALTH *Advisors* Agent" and has the email address Gerald.Hunter@USH*Advisors*.com." Compl. at ¶¶ 35, 37 (emphasis added). Buchmiller's conclusory allegations that the text messages came from or on behalf of USHG cannot stand in light of the Kober Declaration. *See* Ex. A at ¶¶ 16-17 (explaining that USHG has no relationship with or control over Gerald Hunter). Not only does Buchmiller fail to allege any conduct by USHG, there could not be any cognizable contacts between USHG and Kansas with respect to Buchmiller's claim because Buchmiller is not a resident of Kansas, does not allege to have a phone number with a Kansas area code, and does not allege that the text she received went into or was sent out of Kansas.

Buchmiller cannot rely on Jones' residency or jurisdictional allegations because "a specific jurisdiction analysis is necessarily claim specific" and plaintiff specific. *Cardenas*, 2017 WL 3315285, at *4 (finding that "personal jurisdiction over one of the defendants as to a particular claim asserted by [a particular plaintiff] does not necessarily mean that it has personal jurisdiction over that same defendant as to [another plaintiff]'s other claims."). Buchmiller admits that she is a resident of Missouri, not Kansas. Compl. at ¶ 2. Thus there is no basis for personal jurisdiction over USHG in Kansas. While Jones alleges that he is a Kansas resident, none of the purported texts to Jones could have affected *Buchmiller* given her Missouri

residency. Any jurisdictional contacts that may have been created with respect to other persons that, unlike Buchmiller, are in Kansas, fail to provide the requisite link for specific personal jurisdiction between Buchmiller's claims and conduct directed at Kansas.

The Supreme Court specifically rejected such an approach in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1781 (U.S. 2017), explaining that "[t]he mere fact that *other* plaintiffs . . . allegedly sustained the same injuries [in the forum] as did the nonresidents – does not allow the State to assert specific jurisdiction over the nonresidents' claims." *See also Spratley v. FCA US LLC*, No. 317CV0062MADDEP, 2017 WL 4023348, *7 (N.D.N.Y. Sept. 12, 2017) ("Similarly, in this case, the out-of-state Plaintiffs have shown no connection between their claims and Chrysler's contacts with New York. Therefore, the Court lacks specific jurisdiction over the out-of-state Plaintiffs' claims."). Thus, Buchmiller's claim against USHG must be dismissed.

## VI.    ASSERTING PERSONAL JURISDICTION OVER USHG WOULD VIOLATE DUE PROCESS

Furthermore, asserting personal jurisdiction over USHG under these circumstances would offend due process, which requires that USHG have sufficient minimum contacts with Kansas arising from its conduct and connections with Kansas that would cause it to expect to be hauled before the State's courts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Nothing in the Complaint suggests exercising jurisdiction over USHG under the circumstances of this case would comport with due process. The only connection that Jones claims to Kansas – remember, Buchmiller claims none – is that he is a resident of the State. That fact, however, is not enough, as Jones has not alleged that USHG (if it was the texter) could have known that Jones was in Kansas. *See Michaels v. Micamp Merch. Servs.*, No. CIV.A. 13-191E, 2013 WL 5970340, at *4 (W.D. Pa. Nov. 8, 2013) (finding court lacked personal jurisdiction over TCPA

defendant because plaintiff provided no evidence that defendant knew Plaintiff was a forum resident such that "Defendants expressly aimed their conduct at *[forum]*, as is required to establish specific personal jurisdiction.") (internal quotations omitted).  Plaintiffs also fail to allege whether they were in Kansas when they received any of the alleged texts. *See Hicks v. Health Ins. Innovations, Inc.*, No. CV173344SDWLDW, 2017 WL 6764054, at *4 (D.N.J. Dec. 20, 2017), *report and recommendation adopted*, No. CV173344SDWLDW, 2018 WL 325308 (D.N.J. Jan. 8, 2018) (dismissing TCPA claim where plaintiff failed to allege that the phone calls in question were either received in or placed from the forum state).  Thus, Jones' residency, in and of itself, is not sufficient to confer personal jurisdiction on this Court.  Even if one delves further and reads the Complaint quite leniently, it fails to state *any* facts showing that USHG purposefully directed any conduct with respect to either Plaintiff that was intentionally directed toward Kansas, so as to render the exercise of jurisdiction by a court in Kansas regarding Plaintiffs' claims reasonable and fair.

## VII.   THE COURT LACKS PERSONAL JURISDICTION OVER USHG WITH RESPECT TO NON-RESIDENT CLASS MEMBERS

Even if the Court finds that Plaintiffs have standing to maintain this suit, the Court is precluded from certifying a nationwide class because the Court lacks personal jurisdiction over USHG to do so. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty*., 137 S. Ct. 1773 (2017) (a court can validly exercise personal jurisdiction over a non-resident's claims only where the court has general jurisdiction over the defendant or specific jurisdiction over the non-resident's claims).  Therefore, the nationwide class allegations should be dismissed.

### a.  This Court Does Not Have General Personal Jurisdiction Over USHG

As described above, there can be no debate that USHG is not within the Court's general personal jurisdiction, which only exists if a defendant's contacts arise from continuous,

systematic, and substantial presence in the forum state. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 415 (1984). *See supra* at Section IV. Nothing in the Complaint suggests that USHG has the continuous and systematic contacts required for general personal jurisdiction, nor could it. USHG was organized under the laws of the State of Delaware and its principal place of business is Fort Worth, Texas. As made clear in the Kober Declaration, USHG lacks the continuous and systematic jurisdictional contacts with the State of Kansas to render them "essentially at home" there. *See* SOF ¶ 1; Ex. A at ¶¶ 3, 7-9, 11-15. Accordingly, there is no basis for the Court to find a *prima facie* showing of general jurisdiction over USHG.

**b. Specific Jurisdiction as to Plaintiffs' Claims Does Not Subject USHG to the Court's Jurisdiction for Non-resident Putative Class Members**

For purposes of specific jurisdiction, a plaintiff's claims "must arise out of or relate to the defendant's contacts with the *forum.*" *Bristol-Myers,* 137 S. Ct. at 1780 (internal quotations and bracketed text omitted). In *Bristol-Myers,* the Supreme Court found that due process and principles of federalism preclude the exercise of specific jurisdiction over a defendant with respect to non-residents' claims based on injuries suffered outside the forum. *Id.* at 1780-81. USHG's due process rights would therefore be violated if the Court exercises personal jurisdiction over non-resident claims in this case.

While the Supreme Court in *Bristol-Myers* did not conclude whether its holding was applicable to class actions, district courts across the nation have held that the federalism concerns of *Bristol-Myers* are equally applicable to class actions where plaintiffs seeks to represent a nationwide class against a non-resident defendant. *See Rafferty v. Denny's, Inc.*, No. 5:18-CV-2409, 2019 WL 2924998, at *7 (N.D. Ohio July 8, 2019); *Garvey v. Am. Bankers Ins. Co. of Fla.*, No. 17-CV-986, 2019 WL 2076288, at *2 (N.D. Ill. May 10, 2019) (collecting cases); *In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711, 724 (E.D. Mo. 2019); *Chernus v. Logitech,*

*Inc.*, No. 17-673(FLW), 2018 WL 1981481, at *7 (D.N.J. Apr. 27, 2018); *Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at *5 (D. Ariz. Oct. 2, 2017).  Courts in the Tenth Circuit have not weighed in on the issue yet.  This Court should find that USHG is *not* subject to personal jurisdiction with respect to non-resident putative class members who can assert no claim based upon any nexus to *this* forum.

The fact that this is a class action should not change the underling analysis of *Bristol-Myers,* which has obvious parallels to a putative nationwide class action in federal court.  "Nothing in *Bristol-Myers* suggests that its basic holding is inapplicable to class actions." *Chavez v. Church & Dwight Co., Inc.*, No. 17 C 1948, 2018 WL 2238191, at *10 (N.D. Ill. May 16, 2018) (slip op.).  *Bristol-Myers* discusses a general principle of due process – in cases involving specific jurisdiction, there must be a connection between the forum and each plaintiff's claims.  The unique facts demonstrated here, with a Missouri resident trying to obtain relief in this Court against a defendant that is not subject to personal jurisdiction in this District or in Missouri, show precisely why the rationale of *Bristol-Myers* is appropriately applied here.

Notably, courts have considered unnamed putative class members for fundamental issues that could abridge the rights of a party, such as the tolling of the statute of limitations, the binding effect of a judgment, and appealing an adverse judgment.  *Sanchez v. Launch Technical Workforce Solutions, LLC*, 297 F. Supp. 3d 1360, 1368 (N.D. Ga. 2018) (citing *Am. Pipe & Contr. Co. v. Utah*, 414 U.S. 538, 540–60 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 184 (1985); *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011)); *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806-07 (2018).  Including unnamed putative class members for purposes of determining whether the court has specific personal jurisdiction over a defendant is akin to those decisions.  Further, applying *Bristol-Myers* here is consistent with the interstate federalism

concerns that underpin personal jurisdiction, i.e., that personal jurisdiction *divests courts* of the ability to reach out beyond their borders to render judgments that are not related to the States in which they reside. *See Bristol-Myers*, 137 S. Ct. at 1781. These same federalism concerns should dictate that a federal district court cannot reach beyond the borders of the forum state to exercise jurisdiction of absent class members' claims that lack any connection to the forum. Accordingly, the nationwide class allegations should be dismissed from the Complaint.

## VIII.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST USHG

Dismissal is also required under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

### a.   Plaintiffs Fail to Plausibly Allege any Conduct by USHG

A party can violate the TCPA by directly sending the text messages at issue or indirectly for texts sent by its agent. *See In re DISH Network LLC*, 28 F.C.C. Rcd. 6574, 6584, 6586-87 (2013). Courts agree that direct liability under the TCPA can exist only against the actual *"maker"* of the texts at issue, *i.e.*, the party that physically placed or initiated the text messages. *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Employees Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 742-43 (6th Cir. 2013); *Donaca v. Dish Network, LLC.*, 303 F.R.D. 390, 394, 396 (D. Colo. 2014).

Plaintiffs expressly state that it was two individual "USHEALTH Advisors Agent[s]", Chad Beisel and Gerald Hunter, who sent the texts at issue, i.e., USHG was not the actual "maker" of the text messages. Compl. at ¶¶ 18-21, 34-38. Plaintiffs offer nothing whatsoever in the form of well-pleaded facts to connect USHG directly to the texts at issue. In fact, USHG was not even mentioned in the texts. While there are originating telephone numbers alleged for the text messages, Plaintiffs fail to associate these telephone numbers with USHG. Nothing in the

Complaint could even suggest that USHG sent any of the text messages, or cause the Court to treat such a suggestion as anything more than specious or, at best, speculative.

Any claim for vicarious liability against USHG – though none is pleaded – also fails to be plausibly stated. While a non-initiating party of a telephone call "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers," *In re DISH Network*, 28 F.C.C. Rcd. at 6584, the Complaint never alludes to, let alone plausibly states, any agency basis for imposing vicarious liability. A plaintiff must allege facts supporting *each* of the elements of the agency theory supporting vicarious liability. *See, e.g., See Cunningham v. Health Plan Intermediaries Holdings, LLC*, No. 17-CV-1216, 2018 WL 835222, *4-7 (N.D. Ill. Feb. 13, 2018); *Phan v. Grand Bahama Cruise Line, LLC*, No. 15-CV-05019-BLF, 2016 WL 1427648, *2 (N.D. Cal. Apr. 12, 2016); *Reo v. Caribbean Cruise Line, Inc.*, No. 1:14 CV 1374, 2016 WL 1109042, *5 (N.D. Ohio Mar. 18, 2016). The Complaint here does not even attempt to allege a theory of vicarious liability, let alone *each* of the required elements. Thus, the Complaint should be dismissed for failure to state a claim against USHG.

**b.  The Complaint Does Not Provide Fair Notice Required By Rule 8**

Plaintiffs have engaged in a tactic commonly referred to as "group pleading" – lumping the allegations of numerous entities and individuals into a single pleading without differentiating between the various actors. "Group pleading violates Rule 8 when a plaintiff fails to distinguish among multiple defendants . . . ." *Snyder v. ACORD Corp.*, 2016 WL 192270, at *3 (D. Colo. Jan. 15, 2016), *aff'd*, 684 F. App'x 710 (10th Cir. 2017); *see also Tavasci v. Cambron*, 2017 WL 3173011 (D.N.M. May 31, 2017) (dismissing a claim that failed to differentiate between two corporations and numerous individuals). When a claim is brought against multiple defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done

*what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations . . . . " *Robbins v. Oklahoma,* 519 F.3d 1242, 1247, 1248 (10th Cir. 2008) (citing *Twombly,* 550 U.S. at 565, n. 10) (emphasis in original).  Here, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin." *Id.*  Therefore, the Complaint should also be dismissed for impermissible group pleading.

## <u>CONCLUSION</u>

For the foregoing reasons, USHG requests that this Court dismiss Plaintiffs' Complaint with prejudice, and award such further relief as this Court deems just and proper.

Dated:  September 30, 2019            Respectfully submitted,

By: */s/ Scott L. Brown*
SCOTT L. BROWN
Blake & Uhlig, P.A.
475 New Brotherhood Building
753 State Avenue
Kansas City, KS 66101
(913) 321-8884
(913) 321-2396 – Fax
slb@blake-uhlig.com

AND

GREENSPOON MARDER LLP

Jeffrey A. Backman (*pro hac vice* pending)
Florida Bar No. 662501
Gregg I. Strock (*pro hac vice* pending)
Florida Bar No. 1010140
200 E. Broward Blvd., Suite 1800
Ft. Lauderdale, FL  33301
(954) 491-1120
jeffrey.backman@gmlaw.com
khia.joseph@gmlaw.com
gregg.strock@gmlaw.com
marie.kusek@gmlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on September 30, 2019, a true and correct copy of the foregoing document was forwarded to all counsel of record in compliance with the Federal Rules of Civil Procedure.

By: */s/ Scott L. Brown*
Scott L. Brown